UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SG LIMITED d/b/a STOCKGENERATION, )<br>)<br>Defendant, )<br>)<br>and )<br>)<br>SG PERFECT LIMITED and SG TRADING LIMITED, )<br>)<br>Relief Defendants. )<br>_____) | CIVIL ACTION<br>NO. 00-11141-GAO |

### FIRST REPORT OF RECEIVER RICHARD J. YURKO AND APPLICATION TO MAKE PAYMENTS TO CLAIMANTS AND OF INTERIM FEES

Richard J. Yurko, the Receiver in this matter (the "Receiver"), submits this report in accordance with this Court's Order for Appointment of Receiver and Approval of Distribution Plan, dated September 4, 2003 (the "Order").

**Activities to Date**

1.      After I was appointed as Receiver pursuant to the Order, under paragraph 6 of the Order, I retained the firm of Strategic Claims Services ("SCS") to assist me in processing the claims of Eligible Claimants and in distributing the Available Distribution in accordance with the Order. I selected SCS for this function after having contacted several similar firms and after discussing with SCS the likely fees to be incurred in this matter.

2. After I was appointed Receiver, I caused the settlement funds to be deposited in an interest-bearing account at Fleet Bank, N.A. I selected Fleet Bank after contacting several banks and obtaining information regarding the interest rate and other terms available from these several banks. The interest rate being paid by Fleet Bank was generally higher than the other rates available from comparable institutions.

3. Notice was sent to each of the Eligible Claimants, as identified in the database that I received form the staff of the Securities and Exchange Commission ("SEC") in accordance with paragraphs 15 and 16 of the Order. There were a total of 1,599 Eligible Claimants in the database. As set forth in the accompanying affidavit of Paul Mulholland of SCS, at my direction SCS mailed the notice, together with a claim form, to the 1,277 Eligible Claimants for whom mailing addresses appeared in the database and sent notice by e-mail to the 322 Eligible Claimants for whom mailing addresses did not appear in the database. (A copy of the notice and claim form sent to Eligible Claimants is attached hereto as Exhibit A.) Notice was sent to all Eligible Claimants on or before September 30, 2003, as required by the Order. All the steps required by the Order were taken.

4. In consultation with SEC staff, I directed that SCS take additional steps not specifically required by the Order to follow up where either notices came back in the mail or e-mail or where claims had not been received from Eligible Claimants. First, as set forth in Mr. Mulholland's affidavit, within three weeks after delivery of the initial notice, SCS sent out a second request by e-mail to the approximately 1,500 Eligible Claimants. Second, prior to November 14, 2003, SCS attempted to contact by telephone each of the Eligible Claimants who had not yet filed a claim and for whom telephone numbers were available in the database. Third, the notice and claim form were posted on SCS's website. Fourth, in consultation with SEC staff,

SCS performed internet address searches for those Eligible Claimants who had claims of at least $5,000 and who had not filed a claim. Of those eleven Eligible Claimants, SCS obtained potential mailing addresses for four and mailed them notices and claim forms, but received a claim from only one such Eligible Claimant. Given the steps already taken to contact Eligible Claimants, the limited identifying information available in the database, the lack of certain important personal information such as social security numbers, the large number of Eligible Claimants residing outside the United States, the amounts of money involved, the expense of taking further steps to track down additional Eligible Claimants, customary practice in processing claims of this type and the limited likelihood of success, in consultation with the SEC staff and SCS, I determined that these procedures were reasonably sufficient and fully complied with the Order.

**Claims Filed**

5. The results of the claims process are detailed in Mr. Mulholland's affidavit and the accompanying exhibits. The results are summarized as follows:

|  | Number of Claims Filed | Dollar Value of Claims |
|---|---|---|
| Timely, valid claims | 421 | $395,979.30 |
| Untimely, otherwise valid, claims | 5 | 11,367.60 |
| Total | 426 | $407,346.90 |

In addition, 5 claims, totaling $2,038.57, were rejected for failing to provide proof required by the Order, even after the claimants were given an additional opportunity and more time in which to do so. The name of each Eligible Claimant who filed a claim, together with his or her address, amount of damages, and disposition is listed in Exhibits B (timely, valid claims), C (rejected claims) and D (late, otherwise valid, claims) to Mr. Mulholland's affidavit.

6.  I respectfully request the Court's permission to pay out of the Escrow Fund each of the claims listed on Exhibits B and D to the Mulholland affidavit, together with 2% interest since the date that the Disgorgement Fund was originally established by the entry of final judgment by the Court on May 29, 2003. As it has taken longer than anticipated in tracking down Eligible Claimants, the initial response rate to the notice were very low and I sought reasonably to maximize the number of claims filed, I requested that SCS not send out checks for valid claims until further direction from the Court. Although the Order does not specifically provide for interest, I believe that it would be appropriate to provide for nominal interest from the time the Disgorgement Fund was established. Furthermore, as explained below, the Escrow Fund has been earning interest and the amount of money in the Escrow Fund far exceeds the total dollar amount of valid claims.

7.  I also request permission to pay the five untimely, but otherwise valid, claims as there are ample funds in the Escrow Fund to pay such claims. Moreover, no one is prejudiced by the payment of such claims.

8.  In addition to the claims described above, SCS, on my behalf, has received over 400 putative claims from persons who do not appear on the database and are therefore not Eligible Claimants in accordance with the Order. Based on a random sampling performed by SCS with significant input from the SEC, my understanding is that, although they may have paid money to StockGeneration, these people did not invest money in Company No. 9, which is the only investment for which relief is available herein, and/or they did not suffer a net loss on their investment giving rise to a cognizable claim herein. I understand that SCS has nevertheless spent considerable time investigating and responding to such claims and may be required to do so in the future, even though such claims are being rejected as ineligible. I bring this information

4

to the Court's attention both to alert the Court to the fact that there are a substantial number of claims by ineligible claimants that we are rejecting and that my firm and, in particular, SCS have spent substantial time addressing these ineligible claims. Such additional time was not anticipated at the outset of the receivership and may result in expenses and charges in excess of the $35,000 cap on our fees and those of SCS. If necessary, I intend to address such expenses and charges at the time of my second report.

**Escrow Fund**

9. As noted above, I established a money market savings account at Fleet Bank in Boston, Massachusetts where the Escrow Fund is deposited. As of December 31, 2003, there was a balance of $1,342,054.38 in the account, including both the initial Disgorgement Fund of $850,558 and the $474,544 penalty paid by SG, plus interest. The Escrow Fund has earned $4,176.53 in interest in the Fleet Bank account through December 31, 2003. (See Exhibit B, annexed hereto.)

10. No taxes have been paid on the Escrow Fund to date. Mr. Mulholland is a CPA, whom I have requested to handle any tax matters relating to the Escrow Fund. He has advised me that he does not anticipate that any federal or state taxes will be payable for 2003 because the interest earned by the Escrow Fund is offset by the expenses associated with claims administration. However, we will nevertheless be required to file federal and state tax returns for 2003 and 2004.

**Fee Application**

11. I hereby apply for the payment of our fees and those of SCS, which has performed the services described in the Mulholland Affidavit at my direction. As detailed in the billing report attached as Exhibit C hereto, the fees of my firm, Yurko & Salvesen, P.C., on this

5

engagement total $6,520.00, at our discounted rate, through December 31, 2003. Most of our firm's time has been attributable to time spent by attorney Sanford F. Remz, who has worked under my direction. In addition, we have incurred $17.99 in out-of-pocket disbursements for which we seek reimbursement in accordance with paragraphs 10 and 18 of the Order. Thus, I seek permission to reimburse Yurko & Salvesen, P.C. the total amount of $6,537.99 out of the Escrow Fund for fees and disbursements through December 31, 2003.

12. SCS is currently seeking payment of $16,380 in fees incurred through January 5, 2004 at its customary billing rate. (See Mulholland Affidavit, ¶14.) These fees do not include $5,760 in time for additional work relating to the claims asserted by approximately 400 persons who are not Eligible Claimants, for which time SCS reserves the right to seek payment at a later date. In addition, SCS seeks reimbursement of its out-of-pocket expenses totaling $3,236.50, in accordance with paragraphs 10 and 18 of the Order. (See Mulholland Affidavit, ¶13.) Thus, I seek permission to reimburse SCS the total amount of $23,116.50 out of the Escrow Fund for fees and disbursements through December 31, 2003.

13. If the Court approves the foregoing fee applications, in consultation with the SEC and in accordance with the Order, I intend to pay the Escrow Fund to the SEC in accordance with paragraph 19 of the Order, less the amounts approved by this Court for payment of claims, fees and expenses and less reasonably anticipated future fees and expenses.

14. Based on the foregoing, I respectfully request that the Court enter an Order:

    a. Approving the issuance of checks to Eligible Claimants who filed timely valid claims in the amounts indicated on Exhibit B of the Affidavit of Paul Mulholland, together with two percent interest;

    b. Approving the issuance of checks to Eligible Claimants who filed untimely, though otherwise valid, claims in the amount indicated on Exhibit D of the Affidavit of Paul Mulholland, together with two percent interest;

c. Approving the interim application for the payment of fees of Yurko & Salvesen, P.C. in the amount of $6,520.00 and disbursements in the amount of $17.99; and

d. Approving the interim application for the payment of fees of Strategic Claims Services in the amount of $16,380 and disbursements in the amount of $3,236.

Respectfully submitted,

*[signature]*

Richard J. Yurko, Receiver
YURKO & SALVESEN, P.C.
One Washington Mall, 11th Floor
Boston, MA 02108-2603
(617) 723-6900

Dated: January 14, 2004

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 1/15/04

*[signature]*

7